UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LeRoy Smithrud,

                      Plaintiff,

v.

City of St. Paul; John and Jane Does 1-10,

                      Defendants.

Civil No. 10-4452 (JNE/JSM)

**ORDER**

Plaintiff LeRoy Smithrud brought this action against Defendant City of St. Paul and John and Jane Does 1-10 ("City"), alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 4604(a) and (f), the Americans with Disabilities Act, federal civil rights, and state law.[1] On July 11, 2011, this Court dismissed Smithrud's claims for lack of subject matter jurisdiction. On appeal, the Eighth Circuit affirmed in part, reversed in part, and remanded with instructions that the Court consider whether Smithrud's Verified Complaint ("Complaint") states a claim under federal law. After supplemental briefing on that issue, the Court concludes that it does not.

### I.     BACKGROUND

Smithrud owned three rental properties in St. Paul, located at 1369 Case, 847 Agate, and 1863 Montana. Smithrud alleges that the City falsely posted the 847 Agate and 1863 Properties as "vacant," and then later declared these properties nuisances. On August 20, 2008, the City

---

[1] Smithrud filed a nearly identical action against the City of Minneapolis. *Smithrud v. City of Minneapolis*, Civ. No. 10-cv-4451(JNE/JSM). A separate order will be issued related to that case.

1

Council ordered the demolition of the 847 Agate property. On September 10, 2008, the City Council ordered the demolition of the 1863 Montana property.[2]

Smithrud brought an action against the City in state court in 2008, under many of the same causes of action as asserted in the current lawsuit. The Ramsey County District Court dismissed Smithrud's lawsuit for lack of subject matter jurisdiction, concluding that the only mechanism to review a municipality's quasi-judicial decision is by a petition to the Court of Appeals for a writ of certiorari. The Minnesota Court of Appeals affirmed the dismissal, finding that the district court lacked subject matter jurisdiction over Smithrud's claims. *Smithrud v. City of St. Paul*, No. A08-2003, 2009 WL 2927389 (Minn. Ct. App. Sept. 15, 2009).

On November 3, 2010, Smithrud, proceeding *pro se*, filed the Complaint in this action alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 4604(a), (f), the Americans with Disabilities Act, federal civil rights, and state law.[3] He filed a nearly identical complaint against the City of Minneapolis in a related case. *Smithrud v. City of Minneapolis*, Civ. No. 10-cv-4451(JNE/JSM). The City of Minneapolis moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Honorable Janie S. Mayeron, United States Magistrate Judge, recommended dismissal for lack of subject matter jurisdiction. The Court adopted the Report and Recommendation and dismissed Smithrud's Verified Complaint against the City of Minneapolis. On April 7, 2011, the Court ordered Smithrud to show cause why the Court should not also dismiss his claims against the City of St. Paul for lack of subject

---

[2] The Complaint alleges that Smithrud "lost" the 1369 Case property "after he was threatened and reported said threats to City personnel." Neither the Complaint nor Smithrud's memoranda provide any further detail about the 1369 Case property. In fact, Smithrud's memoranda refer *only* to the Montana and Agate properties. Thus, the Case property appears to be unrelated to Smithrud's federal claims and will not be considered further.

[3] The Court notes that the Verified Complaint is dated October 29, 2010, but was not filed until November 3, 2010.

2

matter jurisdiction. After the parties submitted their briefs, the Court dismissed Smithrud's Complaint on July 11, 2011 for lack of subject matter jurisdiction.

Smithrud, still proceeding *pro se*, appealed the dismissals to the Eighth Circuit Court of Appeals. The Eighth Circuit agreed that this Court lacked subject matter jurisdiction over Smithrud's state law claims, but held that the dismissal of the federal claims was improper. The Eighth Circuit affirmed in part, reversed in part, and remanded for this Court to determine whether the Complaint states a claim under federal law. This Court then ordered the parties to submit briefs on that issue.[4] In addition to addressing whether the Complaint states a claim, the City also asserted that Smithrud's FHA claims were time-barred. Smithrud was permitted to file a response brief on the subject of the FHA's statute of limitations, and the City was permitted to file a reply. All the briefs have now been submitted.

## II. DISCUSSION

When ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011). Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

---

[4] Contrary to Plaintiff's assertions, the Defendants' briefs did not constitute a new motion to dismiss. Although the City did not file a motion to dismiss, the order on remand from the Eighth Circuit was for this Court to consider whether the Complaint states a claim under federal law. The parties were given notice and an opportunity to submit briefs on the issue. Even though there is no pending motion to dismiss, the district court may *sua sponte* dismiss a case pursuant to Rule 12(b)(6). *See Smith v. Boyd*, 945 F.2d 1041, 1042-43 (8th Cir. 1991).

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Smithrud filed his Complaint when he was proceeding *pro se*, even though he is now represented by counsel. Although a *pro se* complaint should be liberally construed, it must still contain specific facts to support its conclusions. *Kaylor v. Fields*, 661 F.2d 1177 (8th Cir. 1981).

The court "generally may not consider materials outside the pleadings," but "[i]t may . . . consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC,* 543 F.3d 978, 982 (8th Cir.2008) (quoting *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999)). The Court may also consider exhibits attached to the pleadings. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). In this case, Smithrud submitted nearly three hundred pages of exhibits along with his Complaint—the Court will consider only those exhibits bearing on this motion. The Court, however, will *not* consider the over two hundred pages of documents Smithrud submitted along with his various (solicited and unsolicited) memoranda and requests.[5] To do otherwise would convert the 12(b)(6) motion into a motion for summary judgment. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1150-51 (8th Cir. 2012) ("Rule 12(d) of the Federal Rules of Civil Procedure requires that a motion to dismiss under Rule 12(b)(6) be treated as a motion for summary judgment under Rule 56 if 'matters outside the pleadings are presented to and not excluded by the court.'" (quoting Fed. R. Civ. P. 12(d))).

---

[5] These additional filings include affidavits, documents, judicial opinions, and a "Request for Judicial Notice." Although Smithrud submitted affidavits purportedly setting forth additional factual allegations, these affidavits cannot properly be considered on this motion. The Court notes that Smithrud is now represented by counsel, and the Court has previously noted that Smithrud, while making passing reference to amending his Complaint, has never filed any motion to do so. *See* July 6 Order (Docket No. 67); D. Minn. LR 15.1.

**A. Fair Housing Act Claims**

"The [FHA] prohibits property owners and municipalities from blocking or impeding the provision of housing on the basis of race, color, religion, sex, familial status, or national origin." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing 42 U.S.C. § 3604(a)-(b)). The Court need not address whether Smithrud's Complaint states a claim under the FHA because any such claim would be time-barred by the FHA's two-year statute of limitations.

The FHA provides that "[a]n aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). "The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." *Id.* § 3613(a)(1)(B). An administrative proceeding is commenced by the aggrieved persons' filing of a complaint with the Secretary of Housing and Urban Development ("HUD"). *Id.* §§ 3610, 3602. Section 3610 provides that "[s]uch complaints shall be in writing and shall contain such information and be in such form as the Secretary requires" and that after a complaint is filed, the Secretary "shall service notice upon the aggrieved person acknowledging such filing and advising the aggrieved person of the time limits and choice of forums provided under this subchapter." *Id.* § 3610(a)(1)(A)(ii) & (a)(1)(B)(i).

The alleged discriminatory housing practices terminated on September 10, 2008, when the City Council ordered the demolition of the 1863 Montana property (the City Council ordered

5

the demolition of the 847 Agate property on August 20, 2008).[6] Smithrud's Complaint was dated October 29, 2010, and filed on November 3, 2010. More than two years elapsed between the City's allegedly discriminatory housing practice and the commencement of this action.

Smithrud asserts that the limitations period should be tolled under the FHA's statutory tolling provision. He claims that he presented evidence that he filed a complaint with HUD, which he believes tolled the statute of limitations until the conclusion of his state court proceedings, including the appeals process. Smithrud directs the Court to "Exhibit 2," but no "exhibit 2" was submitted along with this motion. *See* Memorandum in Response to City of St. Paul's Memorandum Requesting Dismissal of Plaintiff's Lawsuit Pursuant to Rule 12(b)(6), at 2 (hereinafter "Plaintiff's Response Memorandum," Docket No. 73). Nor does the HUD complaint properly appear anywhere else in the record.[7] Even if the Court were to consider the exhibit, the statutory tolling provision still would not apply. The exhibit appears to be a letter addressed to the HUD field office in Minneapolis. But there is no indication that the letter was ever actually sent by Smithrud or received by HUD. *See* 42 U.S.C. § 3610(a)(1)(B)(i) (providing that after a complaint is filed with the Secretary of HUD, the Secretary must serve notice upon the complainant acknowledging the filing). This letter, standing alone, provides no support for

---

[6] The Verified Complaint actually asserts that Smithrud lost the Agate and Montana properties "on or about November, 2007." But taking the facts most favorable to Smithrud, the Court accepts that the alleged discriminatory housing practices did not terminate until September 10, 2008.

[7] Smithrud submitted what he purported to be a complaint filed with HUD with his previous Motion for Partial Summary Judgment, which the Court struck for numerous reasons (including the extreme prematurity of the motion, inaccurate and unsupported assertions that certain facts were undisputed, a violation of the word limitations as set forth in Local Rule 7.1(d), and incompetency with respect to using the electronic filing system). *See* June 20 Order (Docket No. 65). Smithrud did *not* resubmit the exhibit along with any of his briefs related to the 12(b)(6) motion or statute of limitations issue. Counsel for the City, however, did provide the Court with a copy of the purported HUD letter that counsel had received on July 26, 2012.

the assertion that there was ever an administrative proceeding pending. Smithrud's self-initiated state court lawsuit was not an "administrative proceeding" and did not trigger the FHA's statutory tolling provision.

Smithrud also makes reference to the "continuing violations" doctrine, asserting that where there is an ongoing violation, a plaintiff files a timely action "if the 'last asserted occurrence' falls within the statutory filing period." Pl.'s Resp. Mem. 5 (citation omitted). *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (concluding that if a plaintiff under the FHA "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely" when the last asserted occurrence of that practice falls within the limitations period). Smithrud states that the City "had a long-standing policy of unlawfully enforcing its invalid municipal housing codes against his properties resulting in their loss" and that he "is able to demonstrate the maintenance of ongoing violations of the City before and during the relevant time period." Pl.'s Resp. Mem. 5. Smithrud, however, points to no occurrence or incident that took place within the statutory filing period. The last incident involving Smithrud occurred on September 10, 2008. The "continuing violations" doctrine is of no assistance to Smithrud.

Finally, Smithrud also claims that because he filed his state court lawsuit within the statutory period, the limitations period should be tolled. He further asserts that because the City participated in the state court proceedings, it cannot claim to be surprised or prejudiced by the October 2010 filing of the federal complaint. Pl.'s Resp. Mem. 3. A timely filing of a state court lawsuit does not trigger the FHA's statutory tolling provision under 42 U.S.C. § 3613(a)(1)(A) with respect to the commencement of a *different* lawsuit in federal different court. The federal lawsuit must still commence "not later than 2 years after the occurrence or the termination of an

7

alleged discriminatory housing practice." *Id.* To the extent Smithrud is attempting to argue that the statute of limitations should be equitably tolled, the Court disagrees.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) ("In this circuit, 'equitable tolling is appropriate only under limited conditions, for example, where extraordinary circumstances beyond a [plaintiff]'s control prevent the timely filing of a petition' or where the 'conduct of the defendant has lulled the plaintiff into inaction.'" (quoting *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001))). "The use of equitable procedures 'to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" *Earl*, 556 F.3d at 722 (quoting *Flanders v. Graves*, 299 F.3d 974, 976 (8th Cir. 2002)); *see also Finch v. Miller*, 491 F.3d 424, 427-28 (8th Cir. 2007) ("Equitable tolling is an exceedingly narrow window of relief." (internal quotation marks omitted)); *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006) ("Courts generally require strict compliance with a statute of limitations and rarely invoke doctrines such as equitable tolling to alleviate a plaintiff from loss of his right to assert a claim.").

Smithrud has not argued, nor can the Court find, that any "extraordinary circumstances" exist in this case. Extraordinary circumstances exist "when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay." *Maghee v. Ault*, 410 F.3d 473, 476 (8th Cir. 2005) (internal quotation marks omitted); *see also Pecoraro*, 435 F.3d at 875 ("[T]he remedy of equitable tolling traditionally is reserved for circumstances 'truly beyond

the control of the plaintiff' and 'should be applied where a party acts diligently, "only to find himself caught up on an arcane procedural snare."'" (citations omitted)). When Smithrud filed his action in state court, the state district court lacked jurisdiction over the claim because the only means by which to challenge the City's quasi-judicial decision to abate a nuisance property was through a petition for a writ of certiorari to the Minnesota Court of Appeals. *Smithrud*, 2009 WL 2927389, at *2. There is a sixty-day limitation period for filing the petition. Minn. Stat. § 606.01. Smithrud never filed a timely petition for a writ of certiorari. Smithrud's lack of understanding of the law is not an extraordinary circumstance and does not justify equitable tolling. *See Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003).[8]

Even if extraordinary circumstances existed, the record indicates that Smithrud did not diligently pursue his rights. Although he timely filed a claim in the state district court, he did not immediately file in federal court when the state district court dismissed his claim. Nor did he file his federal complaint when the Minnesota Court of Appeals affirmed the dismissal in September 2009. Instead, Smithrud waited over a year from the conclusion of his state court proceedings before filing a claim in federal court.[9] Had he filed his federal complaint soon after his state complaint was dismissed, or when the appellate court affirmed the dismissal, he would have been well within the two year limitations period. His failure to do so demonstrates a lack of diligence,

---

[8] Additionally, it is not even clear whether equitable tolling should be allowed where the prior dismissal was on jurisdictional grounds. *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965) ("[W]hen a plaintiff begins a timely FELA action in a *state court of competent jurisdiction* . . . the FELA limitation is tolled during the pendency of the state action." (emphasis added)); *Weathers v. Bean Dredging Corp.*, 26 F.3d 70, 73 (8th Cir. 1994) ("We . . . decline to decide the question of whether or not equitable tolling should be allowed where the prior dismissal was on jurisdictional grounds.").

[9] Smithrud asserts that the Minnesota Supreme Court denied review of the Minnesota Court of Appeals' decision in his case on November 24, 2009. Even so, over eleven months elapsed since that denial and Smithrud's filing of his federal complaint.

for which equitable tolling is not warranted. *See, e.g.*, *Pecoraro*, 435 F.3d at 875 (finding that the plaintiff did not act diligently where he filed his initial lawsuit in a district lacking personal jurisdiction, and stating that although the plaintiff's initial act of suing the defendant in the improper court may have been reasonable, the plaintiff's "subsequent failure to take heed of numerous warning regarding personal jurisdiction was unreasonable"). It should have been clear when the state district court dismissed Smithrud's lawsuit that the state court lacked jurisdiction over Smithrud's claims. It should have been even clearer when the appellate court affirmed the dismissal. But instead of promptly filing his claim in federal court, Smithrud "sat on his hands for over one year rather than attempting to protect his lawsuit by immediately filing a claim" in federal court. *Id.* "We will decline to apply the doctrine of equitable tolling if a [plaintiff] has not diligently pursued his rights." *Earl*, 556 F.3d at 722. *See e.g.*, *Pace*, 544 U.S. at 419 (finding a lack of diligence where the petitioner waited five months after his judgment of conviction became final to file a habeas petition); *Nelson v. Norris*, 618 F.3d 886 (8th Cir. 2010) (finding a lack of diligence where the petitioner waited nine months after a rehearing in state court was denied).

The FHA's statutory tolling provision is not triggered in this case. Nor does the Court find it appropriate to equitably toll the FHA's two-year statute of limitations. There has been no argument or demonstration of "extraordinary circumstances" and Smithrud has not been diligent in pursuing his claims in federal court. Because more than two years elapsed between the termination of the City's allegedly discriminatory practices with respect to Smithrud and the filing of his federal complaint, Smithrud's FHA claims are time-barred and must be dismissed.[10]

---

[10] Even if Smithrud's FHA claims were not time-barred, the Complaint would still fail to state a claim under that statute. First, there are no facts supporting the general statement that Smithrud's tenants belonged to protected classes, or to which protected classes they belonged.

**B. Americans With Disabilities Act ("ADA")**

Smithrud's Complaint and memoranda refer to the ADA, but it is not clear to the Court that Smithrud intended to actually make a claim under that Act. The Complaint alleges that Smithrud "is and was disabled at all times material as defined in the Americans With Disabilities Act," "had repeatedly so notified City personnel," and that "City personnel repeatedly knowingly and intentionally, if not negligently refused to provide any accommodations as requested by Smithrud." Compl. ¶¶ 9-10. But none of Smithrud's submissions—not even those submitted by his attorney—cite to any provision of the ADA or case law interpreting the ADA. Rather, his memoranda repeatedly cite to 42 U.S.C. § 3604(f)(1), a provision of the FHA prohibiting housing discrimination based on a person's handicap. Thus, all of Smithrud's disability claims appear to be asserted under the FHA, not ADA (and the FHA claims are time-barred). Although

---

There are no facts to support a claim that the City acted *because* of Smithrud's tenants' alleged protected class status. And despite Smithrud's conclusory statement that the City's actions had a disparate impact on protected class members, there are no factual allegations to support that statement either. In fact, the Complaint only states that the City's actions cause *Smithrud* to lose his rental properties, and caused three of *his* tenants to lose their housing. The crux of a disparate impact claim is "that the objected-to action[s] result[ed] in . . . a disparate impact upon protected classes compared to a relevant population," or, in other words, that the City's policies "ha[d] a significant adverse impact on members of a protected minority group." *Gallagher*, 619 F.3d at 833 (citation omitted). The Complaint contains no facts to support such a claim. Further, the City's alleged violation of the State Building Code, in and of itself, does not constitute an FHA violation. Finally, the City's meritorious arguments to the state court regarding the state court's lack of subject matter jurisdiction also do not constitute an FHA violation.

With respect to Smithrud's disability claims under the FHA, the Complaint does not allege that Smithrud was a "buyer or renter," was denied a dwelling, or that such denial was because of his alleged disability. The Complaint alleges only that the City allowed the demolition of Smithrud's properties, even though he was disabled and notified the City of his disability, and that the City refused to provide accommodations as requested by Smithrud. In his memorandum, Smithrud argues that the City did not consider his disability when determining the costs of rehabilitating his rental properties or otherwise determining whether his rental properties complied with the City's codes. But a disabled owner of a rental property is not entitled to violate housing codes because of his disability. The Complaint fails to state a claim under 42 U.S.C. § 3604(f)(1).

the Court liberally construes a *pro se* complaint, it is inappropriate to do so here where Smithrud is now represented by counsel and it is clear based on his numerous recent submissions that no claim under the ADA is intended.

Even if Smithrud intended to bring suit under the ADA, his Complaint would nevertheless fail to state a claim under this statute. Title II of the ADA states in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132 (1994). Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). As explained above, the Complaint only alleges that Smithrud is disabled, notified City personnel of his disability, and that the City did not provide "any accommodations as requested by Smithrud." Compl. ¶¶ 9-10. These vague assertions are conclusory, utterly lacking in factual support, and thus are insufficient to survive a motion to dismiss under Rule 12(b)(6).[11] There are no facts concerning what benefit Smithrud was denied, what reasonable accommodations he requested, to whom he made those requests, or that he was even discriminated against because of his disability. Rule 12(b)(6) requires more than mere labels and conclusions. *Iqbal*, 556 U.S. at 678. Here, we do not even have "a formulaic recitation of the elements of a cause of action," let alone "sufficient factual matter . . . to state a

---

[11] Although the Complaint contains no facts to support Smithrud's claim of disability, the Court was able to unearth an exhibit from the nearly three hundred pages Smithrud filed along with his Complaint. The exhibit is a medical record from September 10, 2008, describing Smithrud's numerous medical problems, including a back injury from 2003, and stating that "he is now disabled."

claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). Smithrud's threadbare allegations do not state a claim under the ADA.

## C. "Civil Rights" Claims

Smithrud alleges in his Complaint that the City Attorney, City Officials, and Ramsey County Court personnel, including Ramsey County judges, conspired "to pre-plan and staff a specialized housing court wherein landlords such as Plaintiff would be destined to lose." Compl. ¶ 64. The Complaint asserts that those actions violated 42 U.S.C. §§ 1981-1983 because they amounted to a conspiracy to violated Smithrud's civil rights, "including violating the State Building Code and Constitutional Amendments Five and Fourteen." This is the full extent of Smithrud's "civil rights" claims. Smithrud's "Memorandum in Opposition of Dismissal of Plaintiff's Complaint Pursuant to Rule 12(b)(6)" (hereinafter "Plaintiff's Opposition Memorandum," Docket No. 52) does little to shed light on how Smithrud's civil rights were violated, or even which civil rights are being implicated in this action.[12] As far as the Court can tell, Smithrud's primary argument appears to be that his inability to succeed in his state court lawsuit somehow amounted to a civil rights violation. It does not.

---

[12] Smithrud's Opposition Memorandum—apparently drafted by his attorney—is excruciatingly convoluted and difficult to understand. The Court made its best attempt to decipher Smithrud's arguments. Smithrud seems to be asserting that he was somehow denied procedural due process. *See* Pl.'s Opp. Mem. 18 (stating that the "City engaged in applying illegal code enforcements based upon vague terminology of their city ordinances and denied individuals due process in the City's enforcement proceedings"). It is not clear from the Complaint or memoranda how Smithrud's due process rights have been denied and there are no facts to support a due process claim. He also claims to have been deprived "of his constitutional rights granted to him under Federal Housing Act and Civil Rights Act, Section 1983." *Id.* at 52. There again are no factual allegations to support this claim (and, of course, federal statutes may provide an enforcement mechanism for constitutional rights, but they do not, themselves, grant such rights). Finally, Smithrud asserts in his brief that the City's demolition of his properties deprived him "of his § 1981 and § 1982 rights to make and enforce his real estate licensing agreement to be able to sell, rent and/or convey his real estate property." *Id.* This claim appears nowhere in the Complaint, nor are there factual allegations to support it.

Section 1981 and 1982 prohibit intentional discrimination on the basis of race. 42 U.S.C. §§ 1981, 1982. Smithrud's Complaint contains no race-based allegations. The Complaint's bare assertions that Smithrud's tenants were members of "protected classes," without ever alleging which protected classes were at issue, and with no mention of race whatsoever, do not suffice. Further, Smithrud's "civil rights" claims do not appear to involve these alleged protected class members—rather, the claims are based on Smithrud's status as a landlord (i.e., that landlords were somehow discriminated against). Additionally, claims under § 1981 and § 1982 require an allegation of discriminatory intent. *See Gallagher*, 619 F.3d at 839 (stating that claims under 42 U.S.C. §§ 1981, 1982, and 1983 require a showing of discriminatory intent). The Complaint does not allege discriminatory intent—in fact, the Complaint states that "[s]uch retaliation and damage, whether intentional or not, has proximately caused damages . . . ." Compl. ¶ 60. The Complaint fails to state a claim under 42 U.S.C. § 1981 and § 1982.[13]

In order to assert a § 1983 claim against a governmental entity, a plaintiff must establish that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity. *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citing *Monell v. N.Y. Dep't of Social Servs.*, 436 U.S. 658, 690-92 (1978)). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Id.* at 817-18 (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)). "At a minimum, a complaint must allege facts which would support the existence of an

---

[13] Further, § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir.1998).

unconstitutional policy or custom." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

The conduct that Smithrud asserts violates § 1983 is the City's making of a legal argument regarding subject matter jurisdiction before the Ramsey County District Court, and the district court's acceptance of that argument. The Minnesota Court of Appeals later affirmed the district court's decision. This is not an "unconstitutional policy or custom," nor did it deprive Smithrud of any federal rights. Construing the Complaint as liberally as possible, it is possible that Smithrud also asserts that the City's declaration of his properties as "vacant," despite allegedly being on notice that the properties were not vacant, also violates § 1983. But there are no factual allegations to support that this action was pursuant to a "policy or custom," or that it deprived Smithrud of any rights under the United States Constitution or federal law. The only other practice implicated in the Complaint (although not clearly tied to Smithrud's § 1983 claim) is the City's enforcement of its housing code against Smithrud's properties, which Smithrud asserts violated state law because the City's housing code is more stringent than the State Building Code. Even if the City violated state law, "violations of state laws do not by themselves state a claim under 42 U.S.C. § 1983." *Lilley v. State of Mo.*, 920 F. Supp. 1035, 1044 (E.D. Mo. 1996), *aff'd*, 111 F.3d 135 (8th Cir. 1997); *see also Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("It is established beyond peradventure that a state actor's failure to observe a duty imposed by state law, standing alone, is not a sufficient foundation on which to erect a section 1983 claim."). Additionally, the Complaint contains no factual allegations to show that this practice was discriminatory or deprived anyone of due process or any other constitutional or federal rights.[14] The Complaint fails to state a claim under 42 U.S.C. § 1983.[15]

---

14     As explained above, the Complaint does not adequately plead a FHA or ADA violation.

**D. Fraud on the Court Claim**

Focusing again on the City's arguments before the state court, Smithrud alleges that the City Attorney committed fraud on the Ramsey County District Court by arguing that the court lacked subject matter jurisdiction over Smithrud's claims. He asserts these claims under Minnesota Statutes §§ 481.07 and 481.071. The Eighth Circuit affirmed that this Court lacks subject matter jurisdiction over these state law claims. *See Smithrud v. City of Minneapolis*, 456 Fed. App'x 634, 635 (2012). To the extent that Smithrud argues that this conduct violated federal law, the Complaint fails to state a claim. As previously explained, an attorney's good faith legal arguments, especially meritorious arguments that are affirmed on appeal, do not constitute fraud, violate federal law, or violate Smithrud's civil rights.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Smithrud's Verified Complaint fails to state a claim under federal law and is therefore DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 18, 2012

                                                                           s/Joan N. Ericksen
                                                                          JOAN N. ERICKSEN
                                                                          United States District Judge

---

[15] The Complaint makes no reference to 42 U.S.C. § 1985, but it does allege "a conspiracy to violate civil rights of persons such as Plaintiff, including violating the State Building Code and Constitutional Amendments Five and Fourteen." Compl. ¶ 65. The nature of the allegedly conspiratorial conduct was that the City Attorney argued (successfully) that the Ramsey County District Court lacked jurisdiction over Smithrud's case. After the district court dismissed for lack of subject matter jurisdiction, the Minnesota Court of Appeals affirmed the dismissal. The making of a legal argument, especially a meritorious argument, does not constitute a civil rights violation, nor does it violate any provision of the United States Constitution. Smithrud's Complaint fails to state a conspiracy claim under § 1985.