UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

LeRoy Smithrud,                          Court File No. 10-cv-4452 JNE/JSM

        Plaintiff,

And

City of St. Paul, a municipal corporation,
John and Jane Does 1- 10
        Defendants,
_____

## MOTION TO AMEND FINDINGS OF FACT AND CONCLUSIONS OF LAW AND TO ALTER OR AMEND JUDGMENT PURSUANT TO FED.R.CIV.P. 52(b) and 59(e)
_____

NOW COME Plaintiff, Leroy Smithrud, in the above-entitled matter and

pursuant to Fed.R.Civ.P. 52(b) and 59(e), respectfully asks the Court to amend its

findings of fact and conclusions of law and alter or amend its judgment in the

Court's Order dated September 18, 2012.

### INTRODUCTION- PROCEDURAL HISTORY

Plaintiff, Leroy Smithrud, owned three rental properties in St. Paul, located

at 1369 Case, 847 Agate, and 1863 Montana.  In his Verified Complaint[1] and

accompanying exhibits, Plaintiff identified a pattern of abuses and violations of

_____
[1] Plaintiff's Verified Complaint was dated October 29, 2010 and filed November 3, 2010.

multiple state and federal law committed by St. Paul city inspectors and agents that led to the ultimate demolition of all three of his properties.[2]   The Defendant City ordered the demolition of the 1369 Case property and its demolition took place on or about July 15, 2008.   Following the 1369 Case demolition, the Defendant City ordered the 847 Agate property to be demolished on August 20, 2008 and the 1863 Montana property to be demolished on September 10, 2008.

In an effort to try to save his two remaining properties from demolition, the Plaintiff brought an action in the Minnesota state district court on August 28, 2008, *inter alia*, for a temporary restraining order.   Additionally, Plaintiff, in reliance on 42 U.S.C. §3613[3]'s Congressional grant of concurrent jurisdiction existing in both state and federal court for an aggrieved person to pursue remedies, also asserted federal claims of Federal Fair Housing Act (FHA) violations.   Prior to his filing, Plaintiff also filed a complaint with HUD[4] on August 23, 2008.   The Minnesota state district court denied jurisdiction to hear Plaintiff's federal fair housing claims despite the plain language of the statute and ruled

---

[2] Plaintiff filed a similar action against the City of Minneapolis concerning a 10-plex he owned in Minneapolis.
[3] 42 U.S.C. Section 3713: "An aggrieved person may commence a civil action in an appropriate United States district court or State court…to obtain appropriate relief with respect to such discriminatory housing practice…"

[4] A copy of the formal complaint issued to HUD was included as part of exhibits submitted for Plaintiff's Memorandum in Response to City of St. Paul's Memorandum Requesting Dismissal of Plaintiff's Lawsuit Pursuant to Rule 12(b)(6) which the Court would not consider. See Judge's Order Docket 62.

Plaintiff's only recourse was pursuant to a procedure designated to address quasi-judicial decisions stemming from City Council actions. Plaintiff sought an appeal to the Minnesota Appellate Court which affirmed the district court's decision. Plaintiff also sought and the Defendant City opposed writ of certiorari to the Minnesota Supreme Court.

Plaintiff filed this present action in the Minnesota District court in November 3, 2010 alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §3604-3617[5], the Americans with Disabilities Act, federal civil rights and state law. He filed a similar complaint against the City of Minneapolis in a related case. *Smithrud v. City of Minneapolis*, Civ. No 10-cv-4451 (JNE/JSM). The City of Minneapolis moved for dismissal pursuant to Fed.R.Civ. P. 12(b)(1) and 12(b)(6). The Honorable Janie S. Mayeron, United States Magistrate Judge, recommended dismissal also citing this Court did not have jurisdiction to hear Plaintiff's FHA claims. The Court adopted the Report and Recommendation and dismissed Smithrud's Verified Complaint against the City of Minneapolis. On April 26, 2011 the Court ordered Smithrud to show cause why the Court should not also dismiss his claims against the City of St. Paul for lack of subject matter jurisdiction. The Court dismissed Smithrud's Complaint against the City of St. Paul on July 11, 2011.

---

[5] This accurately reflects the federal statutes on the basis of which Plaintiff brought his FHA claims as distinct from those identified in the Court's order. (See Court Order, Sept. 18, 2012 pg. 2).

The Plaintiff appealed the dismissal to the Eighth Circuit Court of Appeals.

The Eighth Circuit ruled it was improper to dismiss his federal claims and

remanded the case for the Court to determine whether his Complaint stated a

claim under federal law[6]. This Court ordered the parties to submit simultaneous

briefs on that issue. Over objection the Court was abrogating Federal Rules of

Civil Procedure 12(b) in allowing the Defendant City to submit a memorandum to

move for dismissal[7], the Court permitted the Plaintiff to respond on the sole issue

of FHA statute of limitations[8]. The Court in its September 18, 2012 Order

dismissed again Plaintiff's Complaint for failure to state federal claims and ruled

his FHA claims were time-barred.

## ARGUMENT

STANDARD OF REVIEW

Fed.R.Civ. P. 52(b) provides "[o]n a party's motion filed no later than 28

days after the entry of judgment, the court may amend its findings—or make

additional findings—and may amend the judgment accordingly." A motion to

amend findings of fact and conclusions of law is invoked to correct manifest

errors of law or fact. *Evans, Inc. v. Tiffany & Co*, 416 F.Supp. 224, 244 (N.D. Ill.

---

[6] See Eighth Circuit Court of Appeals Ruling dated February 27, 2012; *Smithrud v. City of Minneapolis, et. al.*, 456 Fed. Appx. 634, 2012 WL 603555 (8th Cir. 2012).

[7] Also Letter to the Honorable Judge Ericksen dated June 26, 2012 and July 20, 2012 stating objections; Docket No. 62 and 69.

[8] See Judge's Order, Docket. No. 67.

1976).    Fed.R.Civ. P. 52(b) is "intended to correct findings of fact which are central to the ultimate decision."  *Dale and Selby Superette & Deli v. U.S. Dept. of Agriculture*, 838 F. Supp. 1346, 1347 (D. Minn. 1993)(citing *Adams v. James*, 526 F. Supp. 80, 86 (D.C. Ala. 1981).   The Minnesota district court also held a Rule 59 motion may be granted when "evidence has been admitted or excluded improperly…". (*Dale*, 838 F.Supp. at 1348).

Like Rule 52(b), Fed.R.Civ. P. 59(e) "serves the limited function of correcting manifest errors of law or fact or to present newly discovered evidence".  *Pro Edge L.P.  v. Gue,* 377 F. Supp. 2d 694, 698 (N.D. Iowa 2005) (citing to *Norman v. Ark. Dept. of Educ*., 79 F.3d 748, 750 (8th Cir. 1996).   Rule 59(e) was adopted in order to "make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment".  *Norman v. Ark. Dept. of Educ.,* 79 F.3d 748, 750 (8th Cir. 1996)(quoting *White v. N.H. Dept. of Employment Sec.,* 455 U.S. 445, 450 (1982).  A court has broad discretion in determining whether to grant a Rule 59(e) motion to alter or amend judgment. *Id.,* citing *Innovative Home Health Care, Inc. v. P.T.-O.T. Associations of the Black Hills*, 141 F.3d. 1284, 1286 (8th Cir. 1998)(internal quotations omitted).

A trial court is afforded discretion in considering a case before it, however the court's decision "is not left to its inclination but to its judgment, and its judgment is to be guided by sound legal principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1985).   A district court abuses its discretion when its judgment is not guided by sound legal principles but where the court relies on clearly erroneous fact findings or erroneous conclusions of law. *Pro Edge*, 377 F. Supp. 2d at 699.   Although the Eighth Circuit Court of Appeals has not articulated "manifest error", the Seventh Circuit holds it is "the wholesale disregard, misapplication, or failure to recognize controlling precedent".  *Undlin v. City of Minneapolis,* 2009 WL 3754208 at *3(D.Minn. Nov. 4, 2009)(citing *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000).

Without waiving their right to appeal other issues, Plaintiff Smithrud deems the Court committed manifest errors in reaching its factual and legal conclusions contained in its Order dated September 18, 2012.  Plaintiff respectfully requests the Court amend its judgment and findings of fact and conclusions of law in the manner described below.

I.  THE COURT ADOPTED LEGAL STANDARDS NOT IN COMPORT WITH FEDERAL RULES OF CIVIL PROCEDURES AND FEDERAL CASE AUTHORITY

The first issue concerns Defendant City's contravention of Fed.R.Civ.P.

12(6). Fed.R.Civ.P. 12(b)(6) provides a party may assert the defense of a "failure

to state a claim upon which relief can be granted" by *motion*. (Emphasis added).

Furthermore, the Rule states: "[a] motion asserting any of these defenses must be

made before a pleading if a responsive pleading is allowed." Provided the City of

St. Paul submitted their Answer to the Court on November 24, 2010 rather than

motioning the Court for dismissal based on any defenses enumerated in Rule

12(b), the City has essentially waived its right and is now prohibited from

submitting a memorandum moving for dismissal premised under this Rule. *Njaka*

*v. Wright County*, 560 F. Supp. 2d 746, 751 (D. Minn. 2008)(Defendants move to

dismiss under Rule 12(c) as they have already filed their Answer).

By effectively ordering simultaneous briefs by both parties, the Court

essentially deprived the Plaintiff any meaningful opportunity to rebut or respond

to the Defendant City's arguments moving for dismissal contrary to the language

in *Neitzke v. Williams*, 490 U.S. 319, 330 (1989) which states the procedural

requirements of notice and an opportunity to oppose the motion are

contemplated by the Rule 12(b)(6). This Court refused to allow Plaintiff the

opportunity to respond to all arguments made in Defendant City's memorandum

moving for dismissal prejudicing his position.

Furthermore, the Court recites Fed.R.Civ. P.12(d) stating it requires a motion to dismiss under 12(b)(6) be treated as a motion for summary judgment under Rule 56 if "matters outside the pleadings are presented to and not excluded by the court". (See Court Order pg. 4). However, it is well established case law in the Eighth Circuit which confirm "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion". *State v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir. 1985)(citing *Martin v. Sargent*, 780 F.2d 1334, 1336-37 (8th Cir. 1985). Material that are part of the public record or do not contradict the complaint may be considered by the court in deciding a Rule 12(b)(b) motion to dismiss. *Id.*, (citing *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986). Additionally, materials that are "necessarily embraced by the pleadings" or "exhibits attached to the pleadings" may be reviewed in determining the sufficiency of a complaint. *Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999). "Courts may consider extra-pleading materials necessarily embraced by the pleadings, such as copies of the underlying complaint, the policies themselves, and all documents they incorporate by reference". *Piper Jaffray Companies, Inc. v. Nat. Union Fire Ins. Co.,* 967 F.Supp. 1148, (D. Minn. 1997). Likewise, under a Rule 12(b)(6) motion to dismiss, it is

proper for courts to accept evidence submitted under Fed.R.Evid. 201, Judicial

Notice. *Florida State Bd. of Admin. v. Green Tree Financial Corp.,* 270 F.3d. 645

(8th Cir. 2001)(citing to *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir.

1999)(considering documents under Fed.R.Evid. 201 is not inconsistent with Rule

12(b)(6) and common notions of fairness).

     The Court does not cite any legitimate reason why it would repeatedly

strike and exclude potentially dispositive evidence that Plaintiff sought to admit

into the record.  The evidence submitted by the Plaintiff in no way contradicts the

claims asserted in his Verified Complaint nor does the Court advance this

argument.   Moreover, in addition to striking and excluding evidence, the Court,

on numerous occasions, by apparent oversight or blatant disregard, neglected to

acknowledge the overwhelming factual assertions and/or evidence that was

plainly submitted in the record by the Plaintiff as will be referenced below.

Furthermore, it appears, the Court in assessing whether the Plaintiff sufficiently

stated federal claims, in many  instances restricted its analysis narrowly focusing

on factual statements contained within the four corners of the federal Verified

Complaint and refused to consider all other relevant factual assertions and/or

evidence submitted which would support Plaintiff's federal claims.

In the past, this Court has announced and employed liberal construction when evaluating pro se litigant's claims. This Court held at the pleading stage, "a Plaintiff is not required to plead the correct legal theory, or indeed any legal theory at all, just a short and plain statement of the facts, and the Court must deny a Rule 12(b)(6) motion if it determines the Plaintiff could recover under 'any possible legal theory' consistent with those facts." *Njaka,* 560 F. Supp. 2d at 752(citing 5B Wright & Miller, *Federal Practice and Procedure* §1357, at 676 (3d ed. 2004). See also *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1998)("the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory"). Furthermore, "plaintiffs need not provide specific facts in support of their allegations", but rather "include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level". *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008)(citing *Twombly*, 127 S.Ct. at 1964-65 & n. 3)(internal quotations omitted). A court should only grant a motion to dismiss where "it is clear no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

II.  The Court Misconstrues or Misapplies Controlling Case Law

The Court misapprehends the full scope of an individual's Article III standing to bring a FHA claim[9].   Claimants, such as Plaintiff Smithrud, may bring a cause of action in order to vindicate the rights of his protected class tenants in addition to his own[10].   Furthermore, Section 3617 of the FHA  "protects persons who aid or encourage others in securing rights to equal housing opportunities and conditions by making it unlawful to coerce, intimidate, threaten or interfere with them because of their aid or encouragement."  *People Helpers, Inc. v. City of Richmond*, 789 F.Supp. 725, 731 (E.D.Va. 1992)(citing *Meadows v. Edgewood Management Corp.,* 432 F. Supp. 334, 335 (W.D. Va. 1977).   The Court challenges the general statement that Plaintiff's tenants belong to protected class group[11] only by virtue of the fact that the Court refused to consider the Plaintiff's affidavit in which he affirms the ethnic and racial makeup of his tenants[12].

Furthermore,  Court erroneously argues Smithrud's Complaint must contain factual allegations that the City's unlawful action in demolishing homes must

---

[9] See Footnote 10 in Court's Order, "In fact, the Complaint only states that the City's actions cause *Smithrud* to lose his rental properties, and caused three of *his* tenants to lose their housing."
[10] See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)(Art. III standing requirement satisfied where facts as alleged, respondent suffered "specific injury" of being deprived of living in an integrated community).  See Accord, *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972)(residents could sue owner for his racial discrimination against prospective tenants.)
[11] See Court's Order, Footnote 10.
[12] Admissible under 28 U.S.C. §1726.

cause a wide-range "significant adverse impact on members of a protected minority group" and in only asserting harm to *three of his* tenants from the demolitions, he has not sufficiently pled a claim of disparate impact[13]. However, the Court cites no basis in legal authority for this statement. The United States Supreme Court has recognized standing for individuals based on "the effects of discrimination in a relatively compact neighborhood"[14]. *Havens Realty Corp. v. Coleman*, 455 U.S.363, 377 (1982)(citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 114 (1979)( "for the purpose of standing analysis, we perceive no categorical distinction between injury from racial steering suffered by occupants of a large apartment complex and that imposed upon residents of a relatively compact neighborhood such as Bellwood").

Additionally, the Court misconstrues the legal concept of disparate impact[15]. In asserting a claim of disparate impact, a claimant is not required to prove the element of intent as motivation factor of the conduct, but rather its "effect"[16]. In the holding delivered in *Gallagher v. Magner*, 619 F.3d 823, 835 (8th

---

[13] See Court's Order, Footnote 10.
[14] *Gladstone Realtors* v. *Village of Bellwood*, 441 U.S. 91, 114 (1979).
[15] See Court's Order, Footnote 10.("There are not facts to support a claim that the City acted *because* of Smithrud's tenants' alleged protected class status.").
[16] See *United States v. City of Black Jack*, 508 F.2d 1179, 1184 (1974)("the plaintiff need prove no more than that the conduct of the defendant actually or predictably results in racial discrimination; in other words, that it has a discriminatory effect.") See *Oti Kaga v. South Dakota Housing Dev. Auth.,* 342 F. 3d 871, 883(8th Cir. 2003); *Familystyle of St. Paul v. City of St. Paul, Minn.,* 923 F. 2d 91, 94 (8th Cir. 1991); *Charleston Housing Auth. v. US Dept. of Agric.*, 419 F. 3d 729, 741(8th Cir. 2005).

Cir. 2010), the court concludes the level of dependence on affordable housing is sufficient to demonstrate disproportionate adverse effect. The court confirms, "[w]here a plaintiff demonstrates that a protected group depends on low-income housing to a greater extent than the non-protected population,…it is reasonable to infer that the protected group will experience a disproportionate adverse effect from a policy or decision that reduces low-income housing". *Id.* Plaintiff has sufficiently alleged that as a result of the Defendant City's action to demolish his three properties, the action reduced the number of affordable dwellings for his tenants or future prospective tenants, many of whom were protected class members which would infer disparate impact. Furthermore, Plaintiff submitted an article by TCHouingPolicy.org which substantiated the affordable housing needs not being met in the city.[17]

The Court's dismissive legal conclusions are contradicted by the weight of the controlling case precedent. The Court summarily concludes that the "City's alleged violation of the State Building Code, in and of itself, does not constitute an FHA violation."[18] It is well settled that municipalities are prohibited from enacting ordinances which would conflict with state or federal laws or that would otherwise violate constitutionally protected rights. *Construction and General*

---

[17] See Plaintiff's Request for Judicial Notice, Exhibit 9- Docket 70-11.
[18] See Court's Order, Footnote 10.

*Laborers Union Local 563, AFL-CIO v. City of St. Paul*, 134 N.W.2d 26 (Minn. 1965)("Enactments of the governing body of a city must not only be within the authority delegated to it but also must not conflict with the Federal or State Constitution or state law.")

Plaintiff asserts in his Complaint[19], under the ruling in the *SAX* case[20], cities are restricted from enacting regulations in a subject matter in which the state law occupies the field precluding any deviations under local ordinances. *City of Morris v. Sax Investments, Inc*. 749 N.W.2d 1, 6 (Minn. 2008)(citing *Mangold Midwest Co. v. Village of Richfield*, 274 Minn. 347, 356 (Minn. 1966). The *Sax* court affirmatively held "the relevant language of the State Building Code expresses the legislature's specific intent to supersede municipal building codes". *Sax*, 749 N.W.2d at 7.

In this instance, where the City of St. Paul's actions, in enforcing its municipal ordinance resulting in the demolition of a property, goes beyond the limits of the power granted to the home rule charter city and conflict with state law, it's actions are without legal force or effect. *Lilly*, 527 N.W. at 113; See also *Minnetonka Electric Co. v. Village of Golden Valley*, 141 N.W.2d 138, 140 (Minn.

---

[19] See Plaintiff's state court Verified Complaint ( PSVC) ¶24, Plaintiff federal Verified Complaint (PVC ) ¶23, 27.
[20] The case, *City of Morris v. Sax Investments, Inc*. 749 N.W.2d 1, 6 (Minn. 2008) was submitted as part of Plaintiff's exhibits attached to his Verified Complaint and submitted as evidence under Plaintiff's Request for Judicial Notice.

1965)(where state legislature has preempted the field, municipal ordinance that conflict with state law cannot operate.)  It is Plaintiff's contention that where the City took action to impose unlawful housing codes resulting in demolitions having a disparate impact on protected class tenants, the practice *would be violative* of federal law, 42 U.S.C. §3615, which states, "...any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."

Additionally, where a person's federal fair housing rights have been violated, his constitutionally rights are implicated as well.  The court in *United States v. City of Black  Jack*, *Missouri* explained that the federal fair housing statute was "enacted as an aid to enforcement of the Thirteenth Amendment." The Court further explained that the "[Fair Housing] Act was passed pursuant to congressional power under the Thirteenth Amendment to eliminate the badges and incidents of slavery."  *United States v. City of Black  Jack*, 508 F.2d 1179, 1184 (1974).  Furthermore, the Act was enacted as Title VIII of the Civil Rights act of 1968.  *Green v. Ten Eyck*, 572 F.2d 1233, 1242 (8th Cir. 1978).

III.     THE COURT IGNORED ADMISSIBLE EVIDENCE AND FACTUAL PLEADINGS
SUPPORTING THE PLAINTIFF'S FEDERAL CLAIMS

In the Court's Order, footnote 12, the Court rejects Smithrud's assertion

that the City's demolition of his properties deprived him of his §1981 and §1982

rights "to make and enforce his real estate licensing agreement to be able to sell,

rent and/or convey his real estate property" as it "appears nowhere in the

Complaint, nor are there factual allegations to support it".   However, ¶14 of the

Plaintiff's state court verified complaint (PSVC) , the Plaintiff asserted, "Smithrud

is also listing and attempting to sell his property by Contract, under MLS so as to

protect fair and affordable housing under Federal Law."[21]  In footnote 4 of his

state court complaint, he adds, "See Affidavit of Smithrud, attached regarding Life

Changes Realtors of Richfield, Minnesota." See also PSCV ¶59 "[t]he City's

actions…interfered with Smithrud's ability to contract…".   Plaintiff, in his federal

Verified Complaint (PVC) ¶11 submitted to this Court clarified he wished to re-

state and re-allege all paragraphs as contained in his state court complaint.  This

information is admissible as materials which are "necessarily embraced by the

pleadings."   See *Piper Jaffray Companies,* supra*.    The Court must consider these

additional facts submitted in his state pleadings in rendering its judgment as to

whether the Plaintiff has sufficiently stated federal claims.

---

[21] See Verified State Court Complaint, ¶14; This evidence is admissible as materials which are "necessarily embraced by the pleadings."

IV. PLAINTIFF'S FHA CLAIMS ARE TIMELY PURSUANT TO CONTROLLING EIGHTH CIRCUIT CASE LAW AND CONGRESSIONAL REMEDIAL INTENT

The Court cast doubt on Plaintiff's assertion that he submitted a complaint to the HUD office on August 23, 2008[22]. However, in evaluating a Complaint on a motion to dismiss, the Court does not cite any case law to suggest Plaintiff's factual allegations are to be adjudged by evidentiary standards in order to determine the veracity of his assertions. The federal courts apply a restrictive standard regarding a motion to dismiss under Rule 12(b)(6) such that "all of the well pleaded factual allegations in the [non-movant's] pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Njaka* , 560 F.Supp.2d at 752 (citing to 5C Wright and Miller, Federal Practice and Procedure §1368 (3 ed. 2004)). See also *Schaaf,* 517 F.3d at 549(citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)and Fed.R.Civ.P.8(a)(2). Pursuant to controlling case law, the Court must presume Plaintiff's factual statements to be true. And with respect to the Court's statement that the "HUD complaint does not appear anywhere else in the record", the statement is not completely accurate. The HUD complaint was submitted as part of the Plaintiff's exhibits submitted along with his Minnesota

---

[22] See Court's Order pg. 6)

state court complaint and should be considered as "exhibits attached to the pleadings" or materials "necessarily embraced by the pleadings".

Additionally, the Defendant City and the Court presents no case law to suggest when HUD does not respond in the manner prescribed by the federal fair housing statutes after a claimant submits a complaint, the statutory tolling provision is rendered inapplicable. Rather as urged by Plaintiff and supported by case law, the statutory period is tolled during the time a complaint is pending before HUD [23].

Furthermore, under the three prong test prong factor test enunciated in the Eighth Circuit, Plaintiff is able to demonstrate his case warrants equitable tolling where there has been 1) timely notice, 2) lack of prejudice to the defendant, and 3) reasonable, good-faith conduct by the plaintiff. *Pecoraro v. Diocese of Rapid City*, 435 F. 3d 870, 875 (8th Cir. 2006) (citing *Dakota Truck Underwriters v. S.D. Subsequent Injury Fund,* 689 N.W.2d 196, 202 (S.D.2004))(holding equitable tolling is traditionally reserved for circumstances "truly beyond the control of the plaintiff" and "should be applied where a party

---

[23] See *Metropolitan St. Louis Equal Housing Opportunity Council v. Lighthouse Lodge, LLC*, 2009 WL 1576735 at *5 (W.D. Mo. 2009)(the statute of limitations should be tolled the entire time a proceeding is before HUD); *Accord, Baumgardner v. Sec'y United States Dep't of Hous. And Urban Dev. On Behalf of Holley*, 960 F.2d 572, 576-78 (6th Cir. 1992); *North Dakota Fair Housing Council, Inc. v. Allen*, 319 F.Supp.2d 972,979 (D. N.D. 2004); *Intermountain Fair Housing Council v. Orchards at Fairview Condominium Association, Inc.,* 2011 WL 162401 at *5 (D.Idaho 2011); *Boykin v. KeyCorp*, 521 F.3d.202, 212 (2nd Cir. 2008)(Sotomayer, J.)

acts diligently" and "only to find himself caught up on an arcane procedural snare").

Plaintiff, acted reasonably in reliance upon the plain language of the federal statute and in a good faith effort filed his federal claims in state court exercising his lawful right to do so[24].   Defendant City, by service of process in the state court action, was given timely notice well within the statutory limitations period of the potential damages that would result from the impending demolitions of Plaintiff's two remaining properties.  Defendant City has not claimed prejudice as a result of the filing of Plaintiff's federal claims in this Court.    This is strengthened by the fact that the filings filed in the previous state court involved essentially the same cause of action thereby avoiding the harm the statute of limitations was intended to protect against.  See *Johnson v. Railway Express Agency*, 421 U.S. 454, 467-68 n.14 (1974)(timely filing place defendant on notice giving him the opportunity to protect against unfair surprise).  Arguably, Plaintiff was caught in an "arcane procedural snare" where he could not obtain relief as the state courts refused to

---

[24] *Charchenko v. City of Stillwater,* 47 F.3d 981, 984 (8th Cir.1995)("litigants can choose whether to pursue…claims in state or federal court").

exercise jurisdiction over his federal claims despite the plain and incontrovertible language of the federal statute and controlling case law.[25]

The Court ignores the broad remedial purpose contained in the FHA statute in determining whether the congressional intent would be effectuated by the tolling of the statute of limitations.  The Court in *Burnett* held, "[i]n order to determine that intent, we must examine 'the purposes and policies underlying the limitations provision, the Act itself and the remedial scheme developed for the enforcement of the rights given by the Act'". *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 427 (1965).

In making the conclusion that Plaintiff does not point to any occurrence or incident that took place within the statutory filing period, the Court ignores evidence Plaintiff submitted concerning the City's long standing practice of enforcing its illegal housing codes as substantiated by the adjudicative facts as

---

[25] See *City of Hibbing v. Baratto*, 620 N.W.2d 58, 60 (Minn.App. 2000)(citing *White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 741 (Minn.1986)("certiorari is an extraordinary writ that is appropriate only when no other review is authorized by the law.").

See also *Dodson v. University of Ark. For Med. Sciences,* 601 F.3d 750, 757 (8th Cir. 2010) (concurrence of Judge Melloy as to Rooker-Feldman not barring but instead confirming jurisdiction for constitutional challenges to state regulations, city codes or city council actions as not claims distinct from state judgment)(citing to *Prince v. Ark. Bd. Exam'rs in Psychol.*, 380 F.3d 337, 340 (8th Cir.2004); *Ace Const. v. City of St. Louis*, 263 F.3d 831, 833 (8th Cir.2001); *Lemonds v. St. Louis County*, 222 F.3d 488, 492-93, 495 (8th Cir.2000)).  See Accord *Cleveland Board of Education v. Lowdermill*, 470 U.S. 582 (1985).

determined in the *Gallagher v. Magner* case.  See Plaintiff's Request for Judicial

Notice; See *Florida State Bd. of Admin. v Green Tree Financial Corp.* and cases

cited, supra.  The action complained of in the *Gallagher* case precedes Plaintiff's

initiation of his case prior to 2004.   Additionally the Plaintiff submitted evidence

of lobbying efforts by the Defendant City to overturn the holding in the *SAX*

case[26].  Under Fed.R.Evid. 301, the rebuttable presumption established by the

introduction of this evidence is that the Defendant City still continued to apply its

unlawful code enforcements all during the statutory limitations period.  The

Defendant City has not met their burden to introduce evidence to refute this

presumption.   Therefore, the continuing violations theory is applicable and the

Defendant City's attempt to repeal the *SAX* ruling in 2010 signifies the practice of

enforcing unlawful housing codes that continued into the limitations period.

## V.  PLAINTIFF HAS SUFFICIENTLY PLED FACTUAL ALLEGATIONS TO STATE FEDERAL CLAIMS FOR RELIEF TO BE GRANTED BY THE COURT

In evaluating whether Plaintiff has established sufficient factual allegations

to support his federal claims, the Court scrutinizes fact patterns inconsistent with

those asserted in Plaintiff's brief submitted pursuant to the Court's order to

determine  whether his Complaint states a claim under federal law.

---

[26] Admissible under Rule 201, Judicial Notice, Rule 803(b)(3)  Statement against Interest, Rule 301 Presumptions in Civil Cases Generally.

With regard to his disability claims under the FHA statute, Plaintiff submits sufficient factual assertions to put the Defendant City on notice as to the grounds upon which his claims rest and that he is entitled to redress above a speculative level. The Plaintiff submits in the state court complaint that he was disabled due to a two story fall he sustained in 2003 and he informed the City staff numerous times of his disability. See PSVC ¶19, 20. He further contends he hired others to maintain his properties to meet the City-imposed standards as his disability prevented him from doing so. PSVC ¶20. In PSVC ¶ 40, Plaintiff claims the City of St. Paul failed to provide *any* accommodations for his disability and is "retaliating against Smithrud to take advantage of his disability". He identifies an example of the false posting of his properties as VACANT. Plaintiff asserted essentially the same claims in his federal Verified Complaint. See PVC ¶9, 10, 52. As referenced above, Plaintiff has alleged sufficient factual allegations to support his Federal Fair Housing disability claim.

The Court incorrectly identifies the "full extent of Smithrud's 'civil rights' claims" center solely on Plaintiff's allegations concerning the "City Attorney, City Officials, and Ramsey Court personnel, including Ramsey County judges" who conspired to "pre-plan and staff a specialized housing court wherein landlords such as Plaintiff would be destined to lose" citing to Plaintiff's Complaint ¶61.

Plaintiff culled out specific statements made by Andy Dawkins, Director of Housing Inspections, from deposition testimony[27] in the *Gallagher v. Magner* proceeding which reveal the Defendant City drew money from a revolving account to finance projects against property owners throughout the City. Furthermore, the testimony reveals there was an incentive to prosecute defendant tenants of the housing court depriving them of a proper fair hearing given the concern to replenish the revolving account. There is also testimony the actors involved in coordinating the housing court consisted of judicial officers, City Officials and Assistant St. Paul City Attorneys.

Furthermore, there is undisputed evidence to show the St. Paul Attorney's Office authored an Amicus Brief in support of the City's position to impose stricter housing codes for rental properties in the *SAX* case. This evidence indicates the Defendant City was on due notice of its unlawful actions in enforcing its housing codes against Smithrud's properties at all times relevant. Furthermore, if the St. Paul City Attorney's Office knew and was actively involved in furthering the City's unlawful practices, there is an element of taint in the legal defense theory urged by the Assistant St. Paul Attorney in subsequent state proceedings and this Court

_____

[27] The deposition transcript was included as exhibits to the Plaintiff's State Court Complaint and submitted under Plaintiff's Request for Judicial Notice; Docket 70-13.

in arguing Smithrud's only recourse was to proceed by writ of certiorari thereby

circumventing his right to litigate any of his federal fair housing claims.

Furthermore, because the Plaintiff's constitutional deprivations were a

result of actions of City agent's acting pursuant to the City's unlawful ordinances,

Plaintiff has pled enough facts to sufficiently support a Section 1983 claim under

the *Monell* theory. Plaintiff provides his own affidavit submitted to the City

Council alerting them of their unlawful policy as enforced against his properties[28].

He alleges, "[t]he City's retaliation, as custom or policy,...has proximately caused

damages to protected class members and Smithrud..."(See PSVC ¶67). The

Plaintiff adds in PSVC ¶75, "[t]he City's actions are in violation of 42 U.S.C.§3617

and other laws, and interfered with Smithrud's ability to contract and destroyed

or damaged his property rights, and his civil rights and those of his tenants, under

color of local City law". The Plaintiff, in his federal Verified Complaint, stated that

the federal court had "jurisdiction over claims that the City's policies or

procedures are unconstitutional..." See PVC ¶1. He also contends the City officials

and agent's "statements and behaviors reveal a policy or custom of the City of St.

Paul, to violate Federal Fair Housing and other laws. Such policy or custom

---

[28] This Affidavit was submitted along with Plaintiff's Memorandum in Opposition of Dismissal of Plaintiff's
Complaint Pursuant to Rule 12(b)(6) , although it was stricken from the record. It may be properly considered as
"necessarily embraced by the pleadings" as it was submitted with Plaintiff's verified complaint submitted in state
court.

operates in order to destroy older housing stock which is grandfathered under both the State Building Code and Federal Fair Housing laws, whereas such properties, in many cases are not actually unsafe or pose any danger to the public." See PSVC ¶38. The behaviors of the City include, *inter alia* 1) no Code Compliance inspections completed (PSVC ¶16), 2) false posting of vacant building with tenant still residing inside (PSVC ¶17), 3) no opportunity to be heard before City Council (PSVC ¶21), 4) application of heightened, unlawful city housing codes in contravention of State Building Code (PSVC ¶ 24), 5) failure to consider Plaintiff's disability (PSVC ¶30, 6) refusal to allow him to sell his property (PSVC ¶14), 7)order of demolition of three of his properties (PSVC ¶5, 13), 8) denial of affordable fair housing to protected class tenants (PSVC ¶31). The Court must not ignore his factual contentions in his state pleadings to determine the sufficiency of Plaintiff's federal claims.

The Plaintiff's claims have facial plausibility when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.554, 555 (2007). As analyzed under the *Iqbal* and *Twombly* holdings, the standard in assessing the sufficiency of a complaint is not whether the Court believes the Plaintiff is able to

prove up his allegations. United States Supreme Court precedent affirms quite the opposite. See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009)(a court must proceed "on the assumptions that all the allegations in the complaint are true (even if doubtful in fact)")(citing *Twombly*, 127 S.Ct. at 1955);("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable")(citing *Id*.);("Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations")(citing to *Neitzke v. Williams*, 109 S.Ct. 1827)(1989).

CONCLUSION

The Plaintiff, therefore, respectfully requests the Court amend its findings of fact and conclusions of law to indicate the Plaintiff adequately provided sufficient evidence and factual allegations to support his federal claims as addressed above and to amend or alter the Court's judgment in its Order issued on September 18, 2012 accordingly.

Dated: October 16, 2012                    Respectfully submitted,


                                           LAW OFFICE OF MITCHELL R. HADLER

                                           ____/s/ May C. Yang_____

                                           May C. Yang
                                           MN Atty. #0389166
                                           LAW OFFICE OF MITCHELL R. HADLER
                                           701 Fourth  Avenue South, Ste. 500
                                           Minneapolis, MN 55415
                                           (612) 414-7361/(612) 222-4260
                                           Direct dial-(651) 408-5558
                                           ATTORNEY FOR PLAINTIFF